IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **LUKE AND MENDY DEGELIA** § | | |
| a/n/f for J.D., § | | |
|     **Plaintiffs** § | | |
| § | | |
| **v.** § | NO. _____ | |
| § | | |
| **GEORGETOWN INDEPENDENT** § | | |
| **SCHOOL DISTRICT AND THE** § | | |
| **PRESIDENT OF THE SCHOOL** § | | |
| **BOARD OF THE** § | | |
| **GEORGETOWN INDEPENDENT** § | | |
| **SCHOOL DISTRICT** § | | |
|     **Defendants** § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Luke and Mendy Degelia, Individually and as the natural parents and next friend of J.D. ("the student" or "the child"), collectively termed Plaintiffs herein, by and through their attorneys, Martin J. Cirkiel from the law firm of Cirkiel & Associates, P.C., and Mike Zimmerman from the Zimmerman Law Firm, and bring this their *Original Complaint* alleging that the Georgetown Independent School District and the President of the School Board of the Georgetown Independent School District, In His Official Capacity (hereinafter collectively referred to "the School District Defendants")  violated the various rights of J.D. and Mendy Degelia, as more specifically pled herein.  Plaintiffs reserve the right to replead this *Original Complaint*, if new claims and issues arise upon further development of the facts, as permitted by law.  In support thereof, Plaintiffs would respectfully show the following:

**I. <u>NATURE AND PURPOSE OF THIS ACTION</u>**

1.      J.D. is a student with a disability known as spinal agenesis which means his spine stopped

      growing and he has shortened, under-developed legs.  As such he is wheelchair bound and is considered a child with a disability pursuant to Section 504 of the Rehabilitation Act of 1973.  On or around October 31, 2008, J.D. went on a field trip with his sixth grade class to the San Gabriel Park, in Georgetown, Texas.  Large portions of the park are not accessible for a student like J.D. to safely transverse the environment.  Not surprisingly, when left alone and unsupervised in one of these inaccessible areas, J.D. and his chair fell into the river.  He fell head first, came completely out of his wheelchair, and was totally submerged for a significant period of time.  Were it not for two students who saw the incident and rescued him, he would have likely drowned. The teachers were nowhere to be found.

2. J.D. and his parents claim that the School District Defendants failed to implement the policies, procedures, practices and customs required to keep him safe, violating his civil rights and discriminating against him thereby.

3. For these acts and omissions, J.D. asks this Court to remedy the concerns addressed in this *Original Complaint* and furthermore seeks damages to compensate him for his injuries. Plaintiffs bring this action pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794a ("Rehabilitation Act"), the Americans with Disabilities Act ("ADA"), 42 U.S.C., §12101, et seq., and the 14th Amendment to the United States Constitution as contemplated by 42 U.S.C. §§1983.  Such equitable and remedial actions pursuant to these civil rights acts include but are not limited to damages, compensatory services, costs, reimbursement of out-of-pocket expenses attorney fees and costs, as well as other forms of relief.

4. Furthermore, Mendy Degelia in an individual capacity also brings forth a claim pursuant to Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act as she

too has been the victim of discrimination based upon disability. Specifically, she was an employee of the school district at the time of the incidents that gave rise to this complaint. One she started to advocate on behalf of her son she was retaliated against by her employer, Georgetown ISD, when she was demoted from her job without cause and was constructively discharged.

## II. JURISDICTION

5. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §§ 1331 and 1343 because the matters in controversy arise under the laws and rules of the United States as noted above.

6. Furthermore, this Court has supplemental jurisdiction over various state and common law claims pursuant to 28 U.S.C. §1367.

7. Finally, this Court has jurisdiction to award attorneys fees and costs to the Plaintiffs pursuant to 42 U.S.C. §1983, Section 504 of the Rehabilitation Act of 1973, The ADA and all pursuant to 42 U.S.C §2000d et seq.

## III. VENUE

8. Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs claims occurred in the Western District of Texas.

## IV. CONDITIONS PRECEDENT AND ADMINISTRATIVE EXHAUSTION

9. Plaintiffs contend there is no need for administrative exhaustion in this cause, which may otherwise have been required pursuant to IDEA, 20 U.S.C. §1415(1) and 19 T.A.C. §89.1185(p). First and foremost J.D. is not a student who receives educational services pursuant to IDEA, and as such administrative exhaustion is not required as to his claims for relief.

10. Further, the relief requested herein is not such that a Special Education Hearing Officer

could provide, and as such, administrative exhaustion is not likewise required.

11. In addition and in the alternative, there is no requirement to seek administrative exhaustion pursuant to IDEA if such an effort would be futile, as it would be in this cause.

12. Nevertheless, Plaintiffs did request an administrative hearing with an Impartial Section 504 Hearing Officer, the Honorable Mr. Joe K. Arnold. On or about July 1, 2009, a summary proceeding was held.[1] Shortly thereafter the Hearing Officer ruled that the school did discriminate against J.D. in a number of manners and particulars, as originally pled in Plaintiffs *Original Complaint and Request For A Section 504 Hearing.*

13. Plaintiffs agree with the Section 504 Hearing Officer's decision except where the Hearing Officer determined that the school district did not grossly mismanage the child's educational plan and appeal that part of his decision..

14. In any case, Plaintiffs state that all other conditions precedent to the filing of this lawsuit, if any, have otherwise occurred.

## V.  PARTIES

15. J.D. is a citizen of the State of Texas and resides with his mother and father, Luke and Mendy Degelia in the City of Georgetown, Williamson County, including the period when the incidents occurred that gave rise to this complaint. At all pertinent times during the period in question, J.D. was a student at the Georgetown Independent School District pupil and deemed a student with a disability, as contemplated by the Rehabilitation Act and the Americans With Disabilities Act.

---

[1]. In regard to Section 504 Administrative proceedings the Hearing Officer is selected and retained by the school district, as is the formal record. During the hearing there is no formal discovery, depositions or cross-examination of witnesses. In any case, Plaintiffs will seek the entire administrative record from the school district and will jointly file and stipulate to the record, as soon as is reasonably possible.

16. Defendant Georgetown Independent School District is a school district organized under the laws of the State of Texas and at all times was responsible for the care, management and control of all public school business within its jurisdiction as to Plaintiff J.D., training of teachers at the school as to safety, abuse and neglect of minors, and supervision of students within the district, for on-campus and off-campus activities and for his course of study and to the rights and duties of employees. They may be served through the Office of the Superintendent, Georgetown Independent School District, 603 Lakeway Drive, Georgetown, Texas 78626, though it is reasonably believed that their counsel of record is the Honorable Ms. Bridget Robinson, Attorney & Counselor at the law firm of Walsh, Anderson, Brown, Gallegos & Green, P.C., P. O. Box 2156, Austin, Texas 78768, and that she will accept service for this cause.

17. The Defendant President of the School Board for the Georgetown Independent School District is a school district organized under the laws of the State of Texas and at all times was responsible for the care, management and control of all public school business within its jurisdiction as to Plaintiff J.D., training of teachers at the school as to safety, abuse and neglect of minors, and supervision of students within the district, for on-campus and off-campus activities and for his course of study and to the rights and duties of employees. The President may be served through the Office of the School Board, Georgetown Independent School District, 603 Lakeway Drive, Georgetown, Texas 78626, though it is reasonably believed that their counsel of record is the Honorable Ms. Bridget Robinson, Attorney & Counselor at the law firm of Walsh, Anderson, Brown, Gallegos & Green, P.C., P. O. Box 2156, Austin, Texas 78768, and that she will accept service for this cause.

## VI.  STATEMENT OF FACTS

18. J.D. is 13 years old and is diagnosed with a congenital form of spinal agenesis[2]. The nature of his disability is that his spine stopped growing and he has shortened, under-developed legs. As such he is wheelchair bound and, among other things, is given a special accommodation when he travels through and transverses the school environment.

19. J.D. is considered a child with a disability pursuant to Section 504 of the Rehabilitation Act of 1973, and has been accepted as such by the Georgetown ISD.

20. In addition, J.D. is also considered a child with a disability pursuant to the Americans With Disabilities Act.

21. In regard to both, when he participates in off-campus activities he must receive the necessary accommodations and modifications so as to participate in programs to the same extent as non-disabled children. In addition, he must receive supervision to the same extent as non-disabled children.

22. On October 31, 2008, J.D. went on a field trip with his sixth grade class to San Gabriel Park, in Georgetown, Texas.

23. This park has large areas that are inaccessible for children who are in wheelchairs, like J.D. Importantly, there are few accessible paths to the edge of the water. Further, the parking area, bathrooms, refreshment stand and playgrounds are all violative of the ADA. Most importantly, in the area where children are known to feed the ducks there is no boardwalk for a child in a wheelchair to be safe.

24. After eating their lunch, the students were permitted to go down to the riverbank to feed the ducks breadcrumbs that were supplied by the teacher. The riverbank is on a sloping plane

---

[2] Also called *sacral agenisis*. The condition can lead to a variety of medical problems ranging from partial absence of the tail bone regions of the spine to more severe cases involving major malformation of the lower vertebrae, pelvis and spine. The most severe types involve a total absence of the sacrum.

as one edges further towards the riverbank. J.D. was left unattended and unsupervised in this unsafe and dangerous environment.

25. While the teachers were gone and no other adults were present, J.D. fell head first into the river. He cannot swim. J.D. came completely out of his wheelchair and was totally submerged in the water.

26. As there was no teachers or other adult supervision in the area, it was left for two other sixth grade students to pull J.D. out of the water. He was covered in slime, leaves, mud, and was soaking wet and horrifically scared.

27. When the teachers arrived they simply put J.D. back on the school bus and he waited there while all the other sixth graders loaded the bus before going back to school. Neither he nor his wheelchair were dried off or cleaned up. Nor was any first aid administered, nor was the nurse called, nor his parents, nor was any ambulance or emergency medical service ever called.

28. J.D. often wears a diaper on outings in case of any accidents. After he fell into the river his diaper was completely full of dirty water. No one took off his diaper or proceeded to change it despite the fact that he had an extra in his bag.

29. Further, the school district personnel failed to contact J.D.'s parents until he was back at school some 20 to 30 minutes later.

30. His mother happened to be at the school early that day in order to pick J.D. up for a routine doctor's appointment. She arrived at the school at approximately 1:50 p.m. to sign him out. Mrs. Degelia asked the school secretary where her son was. She was finally told Mrs. Degelia that her son was in the nurse's office. She assumed J.D. was just getting his diaper changed.

31. At this point, Mrs. Degelia was still unaware of the incident. A male teacher came up to her in the hallway and stated, "We told him to stay back." She then asked the teacher what he was talking about and he stated that J.D. had fallen into the river. The teacher also said that J.D. fell at least four feet off the embankment and into the river. The wheelchair was destroyed.

32. As Mrs. Degelia entered the nurse's office, the nurse was just hanging up her phone. She turned to Mrs. Degelia and said, "Oh there you are," and stated she was just calling her cell phone. It was almost 2:00 p.m. at this point.

33. When Mrs. Degelia saw her son, J.D. had his shirt off, his eyes were red from crying, he was cold, wet, and scared. His diaper had yet to be changed.

34. J.D. began to explain to his mother what had happened at the park. While in the nurse's office, Mrs. Degelia noticed that J.D.'s seat was not attached to the frame of his wheelchair, which created a dangerous situation, because he could have easily fallen out of the chair, while in the office.

35. J.D. was taken home and given a bath by his mother. J.D. had to have his hair washed three times before they were able to get everything out. He had mud in his ears, nose, and mouth.

36. Apparently, the school staff at Georgetown ISD did not even give J.D. any water to rinse his mouth clean at the scene of the incident, on the bus, or even in the nurse's station.

37. J.D. was taken to a local emergency room by his family. He had a closed head wound and also had bruising on his right arm.

38. This was such a traumatic experience for J.D. that he was unable to sleep alone in his own room for quite some time thereafter. His parents moved his mattress to the living room where his father and mother would take turns sleeping with him. It was only recently that

he finally was able to move back into his room and sleep on his own.

39. In addition, for a significant period of time J.D. could not tolerate a bath in standing water. During his baths, he had to just let the water run and not build up around him or else he would re-experience the initial trauma of falling into the river and almost drowning.

40. Before the incident, his grades were A's and B's, and directly after the incident they decreased to low B's, C's and D's. Even almost two full school years later J.D. continues to struggle with his grades. Mrs. Degelia reports that he does not like school as he once did and his lowered self-esteem has won him few new friends.

41. The school district violated J.D.'s rights by bringing him to an environment that was not accessible and did not have the necessary accommodations and modifications necessary for a child like J.D. to enjoy the field trip to the same extent as children without a disability.

42. The school district violated J.D.'s rights by failing to have a safety plan in place for the visit to the park before embarking on the excursion.

43. The school district violated J.D.'s rights by failing to have necessary supervision.

44. The school district violated J.D.'s rights by permitting him to be on a sloping riverbank with no accommodation or modification.

45. Furthermore, paramedics were never called after the incident. His parents were not contacted in any timely manner.

46. He was put on the school bus wet and scared. He and his wheelchair were left covered in mud. His diaper was left on his body, full of dirty and slimy water. He was given nothing to wash out and clean out his mouth. He was humiliated, embarrassed and scared.

47. His parents first brought forward their complaints against the Defendant school district before a Independent Section 504 Administrative Hearing Officer, as noted herein.

48. Furthermore, from 1998 to 2009, Mrs. Degelia worked in the cafeteria of two of the Defendant's schools. Beginning in April 2001, she became the Nutrition Service Manager at Pickett Elementary where she served in a supervisory capacity for approximately seven and one half years with no official written or verbal complaints against her service record.

49. In November 2008 she began receiving relatively minor complaints from her supervisor and the elementary principal; these complaints came right at the time she and her husband began to extensively advocate for their son.

50. Mrs. Degelia received an "acceptable" rating on her evaluation in May of 2009 but in October 2009, she was terminated from her supervisory position and demoted and offered a position as cashier at another school. That demotion would have cut her hours significantly and would also act to decrease her salary accordingly. Instead of taking the district's offer, and remain in such a hostile environment, she was forced to resign.

## VII. CLAIMS FOR RELIEF PURSUANT TO THE REHABILITATION ACT OF 1973

51. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

52. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled child's unique needs, and fails to accommodate that child's disability, it violates Section 504.

53. Plaintiffs assert that the School District Defendants has violated J.D.'s right pursuant to the Rehabilitation Act. Defendant's practices and/or proposed actions, set out in detail above,

have, together and separately, contributed to violating his rights under Section 504, federal rules and regulations promulgated pursuantly thereto.

54. In addition and in the alternative, the failure of the school district to keep J.D. safe from harm while participating in a non-academic program outside of the school environment, and such failure was a gross mismanagement of his educational plan and also a violation of Section 504 thereby.

55. In addition, Mrs. Degelia, a district employee, began to advocate for her son and lost her job with the district solely due to such advocacy. As such, she too is a victim of discrimination based upon disability.

## VIII.  CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT

56. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

57. The facts as previously described demonstrate violations of the Americans with Disabilities Act, 42 U.S.C. §12131, *et seq.* ("ADA") by the Defendant school district.

58. Due to his disability J.D. is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2) with his disability affecting a major life activity.

59. The school district is considered a "public entity" as defined in 42 U.S.C. §12131(1), and receives federal financial assistance so as to be covered by the mandate of the ADA.

60. The School District Defendants failed and refused to reasonably accommodate J.D.'s disabilities and modify their services in violation of Title II of the ADA.

61. In addition, Mrs. Degelia, a district employee, began to advocate for her son and lost her job with the district solely due to such advocacy. As such, she too is a victim of discrimination based upon disability.

## IX. CLAIMS PURSUANT TO 42 U.S.C. §1983 AND THE 14th AMENDMENT TO THE U.S. CONSTITUTION

62. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

63. The School Board Defendant, acting under color of law and acting pursuant to customs and policies of the district, deprived J.D. of rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States.

64. The acts and omissions of the school district deprived J.D. of his rights to life, liberty and bodily integrity guaranteed under the United States Constitution, for which the School District Defendant is liable to J.D. pursuant to 42 U.S.C. §1983 for compensatory monetary damages.

## X. STATE ACTION

65. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

66. The School District Defendant was at all times and in all matters acting under color of state law when they permitted Plaintiffs to be subjected to the wrongs and injuries hereinafter set forth. In addition, the School District Defendant ISD receives funds from the federal government, thus the school district is required to follow the requisites of Section 504 of the Rehabilitation Act of 1973 and the ADA.

## XI. STATE-CREATED DANGERS AND DUTIES

67. Plaintiffs incorporate by reference all the above related paragraphs above with the same force and effect as if herein set forth.

68. The school district personnel brought JD to the river, a known hazard. His teachers gave him breadcrumbs to feed the ducks, and left him by the river unsupervised.

69. The potential for danger is even more pronounced for a student who is disabled and is in a wheelchair, and has limited mobility, like J.D. That potential is of course even more pronounced where a teacher brings such a student to the waters edge, gives him breadcrumbs to feed the ducks, and then leaves him unattended.

70. For any and all the above, the acts and omissions of the school district personnel created the danger which caused the injuries to J.D.

## XII.  SPECIAL RELATIONSHIP

71. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

72. A special custodial relationship existed at all pertinent times between the Defendants and J.D., a student with a mobility impairment. Accordingly, the Georgetown Independent School District had a corresponding duty to provide him a safe environment when attending school sponsored events.

## XIII.  UNCONSTITUTIONAL POLICIES, PROCEDURES , PRACTICES & CUSTOMS

73. Plaintiffs incorporate by reference all the above related paragraphs above with the same force and effect as if herein set forth.

74. Plaintiffs contend that the School District Defendant had a custom in place, including the failure to have a safety plan in place for J.D., that permitted J.D., a student with a disability, to be taken off the school grounds and left unsupervised at a river bank, where he fell into the river and almost drowned. This custom acted to the detriment of J.D., failed to protect him from a known and inherent dangerous situation, thus violating the Fourteenth

Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

75. Plaintiffs contend that these failures of the School District Defendant to have policies, procedures, practices and customs in place to protect J.D. from a known and inherent dangerous situation, violates the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983.

76. Plaintiffs contend that these failures of the School District Defendant to have policies, procedures, practices and customs in place to assure staff was correctly trained, so as to protect J.D. from a known and inherent dangerous situation, violates the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

77. Plaintiffs contend that these failures of the School District Defendant to have policies, procedures, practices and customs in place to assure staff was correctly supervised, so as to protect J.D. from a known and inherent dangerous situation, violates the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983.

78. Based upon the operative facts, such acts and omissions rise to the level of deliberate indifference, constituting a violation of the Fourteenth Amendment of the Constitution of the United States, and for which C.A. seeks recovery pursuant to 42 U.S.C. §1983.

### XIV. RATIFICATION

79. The School District Defendants ratified the acts, omissions and customs of school district personnel and staff.

80. As a result the School District Defendants are responsible for the acts and omissions of staff

persons who were otherwise responsible for the safety of J.D.

## XV.  PROXIMATE CAUSE

81. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

82. Each and every, all and singular of the foregoing acts and omissions, on the part of Defendants, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XVI.  DAMAGES

83. As a direct and proximate result of the Defendants' conduct, J.D. has suffered injuries and damages, for which he is entitled to recover herein within the jurisdictional limits of this court, including but not limited to:

    a.  Physical pain in the past;

    b.  Medical expenses in the past;

    c.  Mental anguish in the past;

    d.  Mental anguish in the future;

    e.  Mental health expenses in the past;

    f.  Mental health expenses in the future;

    g.  Physical impairment in the past;

    h.  Various out-of-pocket expenses incurred by the parents of J.D. but for the acts and omissions of the Defendant school district; and

    i.  attorney fees.

84. As a direct and proximate result of the Defendants' conduct, Mendy Degelia has suffered injuries and damages, for which she is entitled to recover herein within the jurisdictional

limits of this court, including but not limited to loss of income and attorney fees.

## XVII. ATTORNEY FEES

85. Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth.

86. It was necessary for Plaintiffs to hire the undersigned attorneys to bring forth their administrative claim before an Independent Section 504 Administrative Hearing Officer. As Plaintiffs were prevailing parties in that cause they are entitled to attorney fees and pursuant to 42 U.S.C §2000d et seq.

87. In addition, it was also necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §1988(b), 29 U.S.C. § 794a, 42 U.S.C. § 2000d et seq., 42 U.S.C. § 12205.

## XVIII. DEMAND FOR JURY TRIAL

88. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER

89. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment against each Defendant and request an order including but not limited to the following relief:

   a. A judgment in favor of J.D., by his next friends L.D. and M.D., as supported by a finding that the Defendant did not keep him safe from harm, during the periods claimed, in total or in part thus violating Section 504 of the Rehabilitation Act of 1973 thereby;

   b. A judgment in favor of J.D., by his next friends L.D. and M.D., as supported by a finding that Defendant grossly mismanaged his educational plan, during the periods

        claimed, in total or in part, thus violating Section 504 of the Rehabilitation Act of 1973 thereby;

c.    A judgment in favor of Mendy Degelia as supported by a finding that Defendant retaliated against her for advocating on behalf of her son and discriminated against her thereby, thus violating Section 504 of the Rehabilitation Act of 1973 thereby;

d.    A judgment in favor of J.D. that Defendant during the periods claimed, in total or in part; violated his rights pursuant to the Americans with Disabilities Act, 42 U.S.C. §12131, *et seq.* ("ADA");

e.    A judgment in favor of J.D., as supported by a finding that the Defendant school district violated J.D.'s rights pursuant to the 14th Amendment to the United States Constitution, during the periods claimed, in total or in part;

f.    A judgment in favor of J.D., by his next friends Luke and Mendy Degelia, in an amount sufficient to fully compensate them for the elements of damages enumerated above;

g.    An order directing Defendant to take any and all other specific actions required by Section 504 of the Rehabilitation Act of 1973;

h.    An order noting Plaintiff as prevailing party in the underlying Section 504 administrative claim and cause, and in this cause as well, so that Defendant would be required to pay or reimburse J.D., by his next friends Luke and Mendy Degelia, for all costs of preparation and trial of this cause of action, including, but not limited to, filing fees, costs of representation, advocate fees, attorney fees, and expert witness fees, incurred by them up to and through trial, and for its appeal if required, pursuant to 42 U.S.C. §2000d et seq., together with pre- and post-judgment interest,

and court costs expended herein;

i. An Order requiring Defendant to pay attorney fees and costs as permitted by the Americans With Disabilities Act and as also pursuant to Section 1983 of the Civil Rights Acts; and

j. Such other relief as the Court may deem just and proper in law or in equity.

    Respectfully Submitted,
    Cirkiel & Associates, P.C.

    __/s/ Martin J. Cirkiel__
    Mr. Martin J. Cirkiel, Esq.
    Federal ID No.:  21488
    State Bar No.:  00783829
    1901 E. Palm Valley Boulevard
    Round Rock, Texas  78664
    (512) 244-6658 [Telephone]
    (512) 244-6014 [Facsimile]
    marty@cirkielaw.com [Email]

    Mr. Michael Zimmerman, Esq.
    The Zimmerman Law Firm
    Federal ID No.: 1091945
    State Bar No.:  22271400
    301 W. Waco Drive
    Waco, Texas  76710
    (254) 752-9688 [Telephone]
    (254) 752-9680 [Facsimile]
    mzimmerman@thezimmermanlawfirm.com  [Email]

    ATTORNEYS FOR PLAINTIFFS