# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| J.D. B/N/F LUKE AND MENDY DEGELIA | § § § | |
| v. | § | A-10-CA-717 LY |
| | § | |
| GEORGETOWN INDEPENDENT SCHOOL DISTRICT, et al. | § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiffs' Opposed Motion for Leave of Court to File Plaintiffs' First Amended Complaint (Clerk's Doc. No. 9); and Defendants' Response in Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint (Clerk's Doc. No. 15). Also before the Court are Defendants' Motion to Dismiss (Clerk's Doc. 3); Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss (Clerk's Doc. No 10); Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Dismiss (Clerk's Doc. No. 14); Plaintiffs' Surreply in Opposition to Defendants' Motion to Dismiss (Clerk's Doc. No. 20); and Defendants' Surresponse to Surreply (Clerk's Doc. No. 22); as well as Plaintiffs' Motion for Partial Summary Judgment (Clerk's Doc. No. 17); Defendants' Response (Clerk's Doc. No. 24); and Plaintiffs' Reply (Clerk's Doc. No. 25). The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation.

## I. FACTUAL BACKGROUND

Minor Plaintiff J.D. suffers from spinal agenesis and is confined to a wheelchair. *See* Amended Complaint at p. 7. J.D. is considered an individual with a disability pursuant to Section

504 of the Rehabilitation Act and the Americans with Disabilities Act. *Id.* J.D. attends Georgetown Independent School District ("GISD") where he is accepted as a child with a disability pursuant to the Rehabilitation Act. *Id.*

On May 16, 2008, J.D.'s Section 504 Committee met to develop his Accommodation Plan. *Id.* at p. 8. On October 31, 2008, J.D. went on a field trip with his sixth grade class to San Gabriel Park in Georgetown, Texas. After eating lunch, the children were allowed to go down to the riverbank to feed the ducks breadcrumbs which were supplied by the teacher. *Id.* J.D. was left unattended near the riverbank and fell into the river. *Id.* Two other sixth grade students pulled J.D. out of the water. *Id.* at p. 9. When the teachers arrived they put J.D. back on the bus where he waited while the other sixth graders boarded. *Id.* J.D.'s parents were not called after J.D. was returned to school, but J.D.'s mother happened to be there to pick him up for a doctor's appointment, so she learned about the incident then. *Id.* at p. 10. J.D.'s parents allege that he has suffered long term damages as a result of the trauma he experienced in the incident.

J.D.'s parents complained to school district personnel. *Id.* at p. 12. J.D.'s parents then filed a complaint with the GISD Superintendent, asking that an impartial Hearing Officer be appointed to hear their concerns. GISD retained the Honorable Joe K. Arnold, who convened a hearing on July 1, 2009. Arnold found that GISD had failed to conduct a legally-required re-evaluation of J.D., and failed to consider what accommodations J.D. would need in non-academic and extra-curricular activities. He also found, however, that GISD did not grossly mismanage J.D.'s educational plan. *Id.*

J.D.'s mother, Mendy Degelia was employed by GISD from 1998 to 2009, working in the cafeteria of two GISD schools. In April 2001, she became the Nutrition Service Manager at Pickett Elementary School where she served for seven and a half years without complaint. In November of

2008, she began receiving complaints from her supervisor and principal. *Id.* at p. 13. In October of 2009, Mendy Degelia was terminated from her position as Nutrition Service Manager and offered a position as a cashier at another school. This position would have resulted in decreased hours. *Id.* Degelia alleges this was in retaliation for her advocacy on behalf of her son. She also alleges she was forced to resign.

## II. MOTION TO AMEND

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given "when justice so requires." A district court has the discretion to consider numerous factors in evaluating whether to allow amendment, including the futility of amending, the party's repeated failure to cure deficiencies by previous amendments, undue delay, or bad faith. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In their Amended Complaint, Plaintiffs seek to add an additional party, Stephanie Blanck, the Georgetown ISD Section 504 Coordinator. They also add various factual assertions and general pleadings regarding their other claims. Defendants argue that Plaintiffs' Motion for Leave to Amend should be denied because adding Stephanie Blanck as a party would be futile. Defendants also assert that she is subject to the arguments in Defendants' Motion to Dismiss already on file. When reviewing a motion to amend pleadings, a court may consider the futility of the amendment. *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996). To determine "futility," the Fifth Circuit applies " 'the same standard of legal sufficiency as applies under Rule 12(b)(6).' " *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). The Fifth Circuit has also recognized as futile amended claims over which a court would have no jurisdiction. *See McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222–23 (5th Cir. 1989)

(leave to amend adding Federal Tort Claims Act allegations would be futile where the plaintiff failed to exhaust administrative remedies, a jurisdictional prerequisite to Tort Claims Act suit).

Having reviewed the claims against Mrs. Blanck, the Court finds, for the reasons discussed below, that the claims against her in her official capacity would be futile, and thus leave to amend to add these claims should be denied. However, the claims against Blanck in her individual capacity are not futile on the face of the pleadings. It is still early in the case, this is Plaintiffs' first request to amend, and no bad faith or undue delay is evident. Thus, leave to amend to add those claims should be allowed. Likewise, leave should be granted to file the remaining portions of the Amended Complaint, none of which add substantive claims or new parties.

### III. MOTION TO DISMISS

Defendants move to dismiss based upon both FED. R. CIV. P. 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) should be granted only if it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in support of its claim. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). The Court may find a plausible set of facts by considering: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane*, 529 F.3d at 557 (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in the light most favorable to Plaintiffs. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."

*CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court recently expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

### A. Claims Against Georgetown ISD School Board President

Defendants first argue that the claims against the President of the Georgetown Independent School District School Board in his official capacity are duplicative and redundant of the claims against the Georgetown Independent School District and as such should be dismissed. Plaintiffs do not address this issue in any of their responsive briefing.

"Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent." *Familias Unidas v. Briscoe*, 619 F.2d 391, 403 (5th Cir. 1980). As the Supreme Court has explained, "[o]fficial-capacity suits . . . 'generally

represent only another way of pleading an action against an entity of which the officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159,165(1985) (quoting *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978)). Therefore, Defendants argue, Plaintiffs' claims against the President of the School Board "in [his] official capacity are redundant and unnecessary because any disputed issues that must be resolved in conjunction with the official capacity claims are the same as those requiring resolution in the claims against the school district." *Doe v. Rains Independent School District*, 865 F. Supp. 375, 378 (E. D. Tex. 1994), rev'd on other grounds, 66 F.3d 1402 (5th Cir. 1995) and 76 F.3d 666 (5th Cir. 1996); citing *Doe v.Douglas County School District Re-1*, 775 F. Supp. 1414, 1416-17 (D. Colo. 1991).

As noted, the Plaintiffs do not respond to this argument. The Court agrees that the suit against the President of the School Board in his official capacity is redundant of the suit against the Georgetown ISD. Accordingly, the claims against the President of the School Board should be dismissed.

### B. Claims Against Section 504 Coordinator Stephanie Blanck

Plaintiffs' bring claims against Stephanie Blanck in both her individual and official capacities. Plaintiffs allege that Blanck is appointed by the Georgetown ISD School Board and is delegated policy-making authority to ensure that Section 504 is implemented correctly. Specifically, Plaintiffs allege that "Defendant Stephanie Blanck failed to assure that the field trip was able to safely accommodate J.D.'s needs and follow his Section 504 Accommodation Plan." *See* Amended Complaint at ¶ 26. Otherwise, all claims against Blanck are identical to those alleged against the GISD School Board President, and GISD, except Plaintiffs also bring their claims against Blanck in her individual capacity. With regard to any official capacity claims against Blanck, they fail for the same reasons as those brought against the President of the GISD Board—the claims are

duplicative and redundant of the claims against the Georgetown Independent School District. Thus, the Court recommends that the District Judge disallow amendment of the complaint to add these claims as they would properly be dismissed once filed.

Defendants' only other objection to the Court permitting Plaintiffs leave to amend to add Stephanie Blanck is their assertion that, with regard to the individual capacity claim against Blanck under § 1983, she would be entitled to qualified immunity, and thus the claim would be futile. Qualified immunity is an inherently fact-based inquiry, and it is inappropriate to address that issue on the minimal pleadings before the Court on that specific issue. When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). Plaintiffs should be afforded an opportunity to respond on this point before it is decided by the Court. The Court will thus recommend that Plaintiffs be allowed to amend their Complaint and add an individual capacity claim against Stephanie Blanck. Blanck and the Defendants can then raise any objections to those claims in a dispositive motion.

### C.  Plaintiffs' 42 U.S.C. § 1983 Claims

A governmental entity such as GISD may be held liable for federal civil rights violations under 42 U.S.C. § 1983 if its policies or customs cause a constitutional tort. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). To state a claim, plaintiff must "plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation." *McClure v. Biesenbach*, 355 Fed.Appx. 800, 803, 2009 WL 4666485 at *2 (5th Cir. Dec. 9, 2009). Where, as here, the plaintiff does not allege that the municipality directly inflicted the injury, but rather that a policy or custom has caused an employee to do so, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Bd. of County Commissioners*

7

*v. Brown*, 520 U.S. 397, 405 (1997). It is well-established that a governmental entity is not liable under § 1983 on the theory of respondeat superior. *Monell*, 436 U.S. at 694.

In this case, Defendants move for dismissal alleging that Plaintiffs have failed to identify an official policy or custom of Georgetown Independent School District that led to J.D.'s alleged constitutional injuries. *See* Motion to Dismiss at p. 3. Plaintiffs respond that Georgetown ISD's failure to train and supervise its employees amounts to "deliberate indifference" sufficient to qualify as a "policy or custom" under *Monell*. Plaintiffs rely upon the rationale set forth in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). Plaintiffs also plead that GISD's failure to have a safety plan in place for J.D. when he was taken off school grounds was a "custom" for § 1983 purposes. Amended Complaint at ¶ 80.

To prevail on a failure to train or failure to supervise claim, the Plaintiffs must prove that the failure to train or supervise the GISD employees present on the date of the incident resulted from deliberate indifference to J.D.'s rights. *Ellis v. Packnett*, 2007 WL 2688540 (S.D. Miss. 2007), citing *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) and *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). "Deliberate indifference is more than mere negligence." *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Deliberate indifference in a failure to supervise or train context generally requires proof of at least a pattern of similar violations arising from training or supervision that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (holding that proof of deliberate indifference generally requires a showing "of more than a single instance of the lack of training or supervision causing a violation of constitutional rights") (citing *Thompson*, 245 F.3d at 459). And the "[p]rior instances must point to the specific violation in question; 'notice of a pattern of similar violations is required .' " *Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010).

8

In this case, Plaintiffs have failed to plead that GISD was on notice of a pattern of incidents similar to J.D.'s. Instead, Plaintiffs attempt to dissect the day that J.D. fell into the river into a series of incidents, ranging from failing to consider J.D.'s needs during a field trip, to leaving J.D. unattended by the river, to failing to respond properly when he fell into the water. *See* Plaintiffs' Surreply at ¶ 3. This, however, is not the sort of series of incidents that the case law discusses. Rather, the reason that courts impose liability on a municipality or school district under this doctrine is that previous incidents have occurred, and those incidents have put the school district on notice of the problem, and the need for a policy or training to address that problem. When a school district, on notice of such incidents, fails to adopt policies or training aimed at preventing them, the courts are willing to impose liability on the school district, as such conduct demonstrates a deliberate indifference to the problem. The series of incidents that the Plaintiffs rely upon all took place over a single day, and thus gave no notice to GISD of the need for training or other policies. These pleadings therefore cannot, as a matter of law, demonstrate the existence of a custom or policy sufficient to impose liability on GISD under § 1983. Instead, to adequately plead a policy or custom to expose GISD to liability for its employees' actions, Plaintiffs would have to plead that GISD had experienced at least one or more previous incidents similar to J.D.'s, and then had failed to train its employees how to avoid incidents such as those. Because nothing remotely close to this has been pled, Plaintiffs' Amended Complaint fails to state a claim against GISD under § 1983.

**D.     Respondeat Superior Claims Against GISD**

Plaintiffs also request that this court "move past the [Supreme] Court's analysis under *Monell* that refused to hold a municipality or governmental entity vicariously liable for the acts of its agents or employees." *See* Amended Complaint at p. 5. The Court is bound by the existing precedents and therefore cannot adopt a standard different from that set forth in *Monell* and its progeny.

### E. Plaintiffs' Claims for State-Created Danger and Special Relationship

Plaintiffs allege that by leaving J.D. by a river to feed the ducks unsupervised in his wheelchair, GISD personnel created a danger to J.D. that resulted in his injuries, and they seek to recover on this "state-created danger" theory. *See* Amended Complaint at p. 16. They also allege that GISD has a special relationship with J.D. arising out of its custody of J.D. and thus GISD had a duty to provide him with a safe environment while he was attending school sponsored events. *See* Amended Complaint at p. 16.

The Fifth Circuit has declined to recognize a state-created danger theory of liability. *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability"); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 422-23 (5th Cir. 2006). Accordingly, dismissal of this claim is appropriate. The special relationship claim relies on the general principle that a state has a duty to assume responsibility for a person's safety when the state takes a person into its custody and holds him against his will. *Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). It is the restraint on an individual's freedom, not the State's failure to act, that establishes a "special relationship." *Walton v. Alexander*, 44 F.3d 1297, 1303 (5th Cir. 1995). In this case, J.D. was on a voluntary field trip, and thus a "special relationship" in the sense relevant here did not arise. *Kings v. Texas*, 2011 WL 721923 (N.D. Tex., 2011).

Therefore, as a matter of law Plaintiffs cannot recover under either a "state created danger" or a "special relationship" theory.

C.     **Plaintiffs ADA and Section 504 Claims**

Plaintiffs assert that the occurrences of October 31, 2008, state claims for violations of J.D.'s rights under both the Rehabilitation Act and the Americans with Disabilities Act.[1] Plaintiffs plead generally that the facts alleged in their Amended Complaint state claims under both Section 504 and the ADA. Amended Complaint at ¶¶ 59-60, 62-66. In addition to these general claims, Plaintiffs also assert that they are appealing the Section 504 hearing officer's decision that GISD had not grossly mismanaged J.D.'s educational plan in the incident on the field trip. *Id.* at ¶ 2. Finally, Plaintiffs seek to recover their attorneys fees incurred in the Section 504 hearing. *Id.* at ¶ 4. In the motion to dismiss, Defendants raise two arguments regarding these claims. First, they contend that there is no federal jurisdiction over Plaintiffs' purported appeal of the Section 504 hearing. Second, they contend that the general ADA and Section 504 claims are barred because Plaintiffs have failed to allege anything more than negligence by the School District.

1.     **Generic 504 and ADA Claims**

Plaintiffs fail to respond to the latter argument anywhere in the (quite ample) briefing on the motion to dismiss. They have therefore abandoned the "general" claims raised under Section 504 and the ADA in the Amended Complaint. Even had they not abandoned the claims, the Defendants' motion to dismiss is correct on its merits. Both the Rehabilitation Act and the ADA prohibit discrimination against qualified individuals with a disability in the programs, services or activities of a public entity. 42 U.S.C. § 12132; 29 U.S.C. § 794(a).[2] In the educational context, this requires

---

[1] J.D. does not bring a cause of action under the IDEA, nor do the parties assert that the IDEA was applicable to him at the time of the incident that is the subject of this litigation.

[2] The language of Title II of the ADA tracks the language of Section 504 of the Rehabilitation Act of 1973, and specifically provides that "[t]he remedies, procedures and rights' available under Section 504 shall be the same as those available under Title II." 42 U.S.C. § 12133. Accordingly, "Jurisprudence interpreting either section is applicable to both.*" Hainze v. Richards*, 207 F.3d 795,

11

that a school district provide a "free appropriate public education" to handicapped students within its jurisdiction. 34 C.F.R. § 104.33. A "free appropriate public education" is defined as "the provision of regular or special education and related aids and services that [ ] are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. § 104.33(b)(1). With regard to the ADA, the implementing regulations require that:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).

To bring an action under the ADA or the Rehabilitation Act against a school for failing to provide adequate services to a child with a disability, a plaintiff must allege facts supporting a claim that the school acted with "bad faith or gross misjudgment." *E.g., Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982);[3] *see also Colin K. by John K v.. Schmidt*, 715 F.2d 1, 10 (1st Cir. 1983)

---

799 (5th Cir. 2000).

[3]The Fifth Circuit's cases in this area are complicated, and it is not clear that the Circuit has adopted the *Monahan* standard in Section 504 and ADA cases in the educational context. It has, however, applied it in cases where the parties explicitly predicated their arguments on it and no party argued that it was the wrong standard. *See K.U. v. Alvin Indp. Sch. Dist.*, 166 F.3d 341 (5th Cir. 1998) (not designated for publication). Further, the Circuit has explicitly adopted the *Monahan* standard in § 504 and ADA cases that were "predicated on a disagreement over compliance with the IDEA." *D.A. v. Houston Ind. Sch. Dist.*, 629 F.3d 450, 454-55 (5th Cir. 2010) (holding that facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or the ADA against a school district predicated on a disagreement over compliance with the IDEA.) Other circuits have adopted the reasoning from *Monahan*. *See Campbell v. Board of Education of the Centerline School Dist.*, 58 Fed.Appx. 162 (6th Cir.2003); *Sellers v. School Bd. of City of Mannassas, Va.*, 141 F.3d 524 (4th Cir. 1998); *Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C. Cir. 1984); *Timms v. Metropolitan School Dist. of Wabash County, Ind.*, 722 F.2d 1310, 1317 (7th Cir. 1983); *see also Smith v. Special School Dist. No. 1 (Minneapolis)*, 184 F.3d 764, 769 (8th Cir. 1999)

(finding that plaintiffs could not bring Rehabilitation Act discrimination claim where they did not allege that the defendants "have any particular animus toward [] disabled children"). As one court has stated, the ADA and Section 504 "do not create general tort liability for educational malpractice." *Smith ex. rel. Townsend v. Special Sch. Dist. No. 1,* 184 F.3d 764, 769 (8th Cir. 1999). While the facts alleged in the complaint are disturbing, and likely point to negligence on the part of those responsible for J.D. on the day in question, they do not rise to the level of bad faith or gross misjudgment. "[A]cts of negligence do not come within the ambit of the ADA." *Norman v. TDCJ–ID*, No. 6:06cv403, 2007 WL 3037129, at *5 (E.D. Tex. Oct. 18, 2007) (citing *Foley v. City of Lafayette*, 359 F.3d 925, 931 (7th Cir. 2004)). *See Pack v. Ark. Valley Corr. Facility*, 894 P.2d 34, 39 (Colo. Ct. App. 1995).

In addition, "[a] plaintiff asserting a private cause of action for violations of the ADA . . . may only recover compensatory damages upon a showing of intentional discrimination." *Delano–Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir. 2002) (citing *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir.1984)). Discriminatory intent is necessary because the ADA incorporates the Rehabilitation Act's remedies. *See* 42 U.S.C. § 12133. In turn, the Rehabilitation Act incorporates the remedies of Title IV of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794(a); 42 U.S.C. § 2000d. Under Title IV, and thus under the ADA, compensatory damages are available only where there is "intentional discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34 (1999). Plaintiffs seek only monetary damages and have failed to allege any acts of intentional discrimination upon the part of GISD. Thus, even if Plaintiffs had not abandoned the claims, Plaintiffs' general ADA and Rehabilitation Act claims fail to state a claim.

---

(extending the Monahan standard to ADA claims). Other district courts in this circuit have as well. *E.g., Ron J. v. McKinney Independent School District*, No. 4:05-cv-257, 2006 WL 2927446 (E.D. Tex. Oct. 11 2006).

## 2. Plaintiffs' Purported Appeal of Section 504 Hearing

In their First Amended Complaint, Plaintiffs purport to appeal the portion of the Section 504 Hearing Officer's finding that the discrimination against J.D. did not rise to the level of gross mismanagement of J.D.'s educational plan. First Amended Complaint at ¶ 2. Defendants respond that unlike the IDEA, Section 504 regulations do not provide for an appeal to federal court, and thus the Court does not have jurisdiction over any such appeal.

Plaintiffs premise their claim that this Court has jurisdiction over this issue on 34 C.F.R. § 104.36, which states:

> A recipient that operates a public elementary or secondary education program or activity shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and *a review procedure*. Compliance with the procedural safeguards of section 615 of the Education of the Handicapped Act is one means of meeting this requirement.

34 C.F.R. § 104.36 (emphasis added). This regulation, however, does nothing to establish federal court jurisdiction; rather, it simply states what is required of a school district like GISD under the relevant federal statutes. A vague reference to "a review procedure" in an implementing regulation cannot by itself create federal jurisdiction. Plaintiffs cite no other authority that a federal district court has jurisdiction to hear an appeal of a Section 504 hearing held by an independent school district. Unlike the IDEA, the Rehabilitation Act itself does not provide a procedure for appeal to federal district court. It is Plaintiffs' burden to prove jurisdiction over their claims. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). The Court therefore concludes that it lacks jurisdiction over Plaintiffs' appeal of the Section 504 hearing to this Court.

### 3. Plaintiffs' Claim for Attorneys Fees

Plaintiffs also request that the District Court award them attorneys fees for the Section 504 hearing that was held on July 1, 2009. Amended Complaint at ¶ 4. Plaintiffs assert that as "prevailing parties" they are entitled to an award of attorneys' fees for the administrative hearing. Defendants again respond that there is no jurisdiction in federal court over such a claim, as there is no statutory basis for this Court to award attorneys fees after a hearing under Section 504. For this claim, Plaintiffs rely upon Section 505 of the Rehabilitation Act, which states:

> In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

29 U.S.C. § 794a(b).

Plaintiffs assert that because the statute refers to both "proceedings" and "actions," they may recover fees for the administrative hearing. Plaintiffs rely upon three cases in support of this claim. At least one of these cases, *J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, is not on point. That case was filed under the IDEA, which has a different statutory and regulatory scheme than the statute at issue here—the Rehabilitation Act. *See J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 123 (2d Cir. 2002). The other two cases both involve courts reviewing the reasonableness of fees sought for administrative hearings that took place under Section 504, where the plaintiff in each suit was pursuing a stand-alone claim in federal court for fees, much like that here. *See M.G. v. E. Reg'l High Sch. Dist.*, 2010 WL 2768606 (3d Cir. 2010) (unpublished opinion); *Elliott v. Board of Educ. of Rochester City School Dist.*, 295 F. Supp. 2d 282 (W.D. N.Y. 2003). In neither case is there any discussion of whether the court had jurisdiction over the claim, as both courts appear to assume they possessed such jurisdiction.

GISD contends these cases are not on point, because they arose in states in which the procedures for hearings under the IDEA and Section 504 are different than those in Texas. This argument is unpersuasive, because, as Plaintiffs point out, nothing in these decisions nor in the statutory language makes jurisdiction to award fees dependent upon what the state procedures are. Section 504 is a federal statute, and if it grants jurisdiction to a federal court in New Jersey to award fees incurred in a hearing held pursuant to Section 504, then it does the same for a federal court in Texas.

The fact is that both of these cases relied upon the statute quoted earlier, 29 U.S.C. § 794a(b), in awarding (or declining to award) fees. While the statute is not explicit on this point, the statute's plain language indicates that fees are recoverable for something other than an "action," specifically, a "proceeding." The fact that Congress employed two words, not one, to describe the situations in which a prevailing party may recover their fees, strongly suggests that it intended that a party be permitted to recover their fees for some sort of proceeding other than an just a suit filed in federal court under Section 504. A reasonable construction of this language is that "proceeding" refers to the very sort of hearing that took place before the hearing officer in this case.[4] It is apparent that the *M.G.* and *Elliot* courts adopted this same construction of the statute. Moreover, § 794a(b) grants the power to award fees to the federal courts, not to the Section 504 hearing officer. The statutory language thus requires that the place to seek fees incurred in a "proceeding" is in federal court, not in the underlying administrative or state hearing. Given all of the above, the Court rejects the

---

[4]The fee statute was adopted by Congress after the Section 504 regulatory scheme was in place, *Patsel v. Dist. of Columbia Bd. of Educ.*, 530 F.Supp. 660, 666 (D.D.C. 1982), and thus Congress would have been aware that such hearings would be taking place when they adopted the fee provision contained in 29 U.S.C. § 794a(b). This is further evidence that the term "proceeding" is properly read to apply to such hearings.

Defendants' jurisdictional argument, and will therefore recommend that the motion to dismiss this claim be denied.

### E. Parents' Claims

#### 1. Luke Degelia

Plaintiff Luke Degelia is J.D.'s father and he brings claims in his individual capacity, seeking reimbursement for out of pocket expenses and lost time and wages. *See* Amended Complaint at p. 5. The ADA and the Rehabilitation Act prohibit public entities from discriminating against an individual based on his or her disability. To recover, the individual must show that he was excluded from or denied benefits pr services based on his disability. *See* 42 U.S.C. 12132; 29 U.S.C. § 794(a). The ADA and the Rehabilitation Act also prohibit public entities from discriminating against an individual based on his or her association with a disabled person. *See* 28 C.F.R. § 35.130(g) (ADA); *Popovich v. Cuyahoga Cnty. Ct. of Common Pleas*, 150 F.App'x 424, 427-28 (6th Cir. 2005) (Rehabilitation Act). An associational discrimination claim "requires a separate and distinct denial of a benefit or service to a non-disabled person" and "may not be premised on a derivative benefit or harm based on treatment towards a disabled person." *United States v. Nobel Learning Cmtys., Inc.*, 2010 WL 1047730, at *4 (E.D. Pa. Mar.19, 2010). Because Luke Degelia has not pled any denial of a benefit or service that he himself suffered, his claims fail.

#### 2. Mendy Degelia

Plaintiff Mendy Degelia is J.D.'s mother and, like his father, brings individual claims for reimbursement of out of pocket expenses and lost time and wages. These claims fail for the same reasons that Luke Degelia's claims fail.

Mendy Degelia also asserts an independent claim that GISD retaliated against her for advocating on her son's behalf. The motion to dismiss argues that this claim should be dismissed

because Mendy Degelia fails to plead that she is a person with a disability who was discriminated against. In essence, they contend that Mrs. Degelia has not pled a retaliation claim. As Plaintiffs properly note, this is patently false. Both the Original Complaint and the First Amended Complaint included retaliation claims under Section 504 and the ADA on behalf of Mrs. Degelia. Original Complaint at ¶¶ 4, 48-50, 55, 61; First Amended Complaint at ¶ 5, 54-56, 61, 67.

Notwithstanding the plain language of the complaint, GISD continues to assert that the claim is not well-pled, but then contends, in a one-sentence argument, that if Mendy Degelia had in fact properly pled a retaliation claim, "she failed to exhaust her administrative remedies with the E.E.O.C." Surresponse to Plaintiffs' Surreply (Clerk's Doc. No. 22) at 5. This argument fails for several reasons. First, and most obviously, Defendants' argument is a factual assertion. Given that the present motion is one made under Rule 12(b)(6), the Court cannot dismiss based on a factual claim. Moreover, the factual claim is only that—a bald factual assertion with no evidence presented. On top of this, it is contained in a "surresponse," the fifth pleading in the chain of pleadings on the motion to dismiss. GISD is the movant, and thus has the responsibility to make its arguments in its motion to dismiss, not in the fifth pleading down the chain, a pleading to which no response is filed. Because Mendy Degelia has yet to have the opportunity to respond to the claim that she has not exhausted her administrative remedies, it is not appropriate to address the argument at this juncture. GISD may raise that issue in a motion for summary judgment with proper notice to Mrs. Degelia, and she will then have the opportunity to respond.[5]

---

[5]The general point of the GISD's cursory argument is correct. Employment discrimination plaintiffs must exhaust their administrative remedies before pursuing claims in federal court. *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Exhaustion under Title VII requires filing a timely charge of discrimination with the EEOC and receipt of a "right-to-sue" letter. 42 U.S.C. § 2000e-5 (e) and (f); *see also Taylor*, 296 F.3d at 379. The exhaustion requirements of Title VII also apply to the claims raised under the ADA and the Rehabilitation Act. 42 U.S.C. § 121117(a) (ADA incorporating by reference the procedures applicable to actions under Title VII);

## III. RECOMMENDATIONS

For the reasons set forth above, the Court **RECOMMENDS** that Plaintiffs' Opposed Motion for Leave of Court to File Plaintiff's First Amended Complaint (Clerk's Doc. No. 9) be GRANTED IN PART and DENIED IN PART. The Court recommends that the Motion be DENIED as to the claims against Stephanie Blanck in her official capacity, and GRANTED for all other purposes, and that the Clerk be directed to FILE Plaintiffs' First Amended Complaint.

FURTHER, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Clerk's Doc. 3) be GRANTED IN PART AND DENIED IN PART. The Court **RECOMMENDS** that the motion be DENIED as to Plaintiffs' Section 504, ADA and 42 U.S.C. § 1983 claims against Stephanie Blanck in her individual capacity, the claim for attorney's fees incurred in the Section 504 hearing, and Plaintiff Mendy Degelia's retaliation claims pursuant to Section 504 and the ADA, and GRANTED as to all of Plaintiffs' remaining claims.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report

---

29 U.S.C. § 794(d) (standards of ADA apply to Rehabilitation Act); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (ADA claim must comply with Title VII's administrative prerequisites prior to commencing an action in federal court); *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981) (Rehabilitation Act subjects plaintiffs to same administrative constraints as Title VII). But until there is evidence before the Court regarding whether any such charges were timely filed, the Court cannot reach the issue.

shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 21st day of July, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE